Argued and submitted October 15, 1979,
resubmitted in banc March 13,
affirmed March 24, reconsideration denied May 9,
petition for review denied June 10, 1980 (289 Or 275)

## FEDERATED AMERICAN INSURANCE COMPANY,
*Appellant,*

*v.*

## CHILDERS, et al,
*Respondents.*

### (No. L 11,317, CA 12858)

608 P2d 584

William G. Wheatley, Eugene, argued the cause for appellant. With him on the briefs was Jaqua & Wheatley, Eugene.

[379]

John J. Haugh, Portland, argued the cause and filed the brief for respondent Lon Gray Childers.

James H. Gidley and Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland, waived appearance for respondent Thomas Mark Ryder.

THORNTON, J.

## THORNTON, J.

This action at law, brought by plaintiff insurer for declaratory relief, was tried to the court. Plaintiff appeals from the judgment determining that defendant Ryder was covered under his father's automobile liability insurance policy.

The sole issue on this appeal is whether the trial court erred in finding that Ryder was a "relative * * * who is a permanent resident of the same household" as his father, and thus entitled to coverage under the non-owned automobile provision of his father's "Family Automobile Policy."[1]

Prior to graduating from high school, Ryder resided with his father and brother in the family home in Grants Pass. In the summer of 1975, Ryder, age 19, decided to enroll at Lane Community College in Eugene, where he hoped to gain a position on the college baseball team. Arriving in Eugene too late to begin the fall term, he returned to Grants Pass and discussed with his father the possibility of living in an apartment in Eugene in order to avoid out-of-district tuition for the winter term. Consequently, he moved to Eugene and occupied his time during the fall by practicing with the college baseball team. His father sent

---

[1] That policy provides in pertinent part:

"*Persons Insured:* The following are insureds under Part I:

" * * * * *

"(b) With respect to a non-owned automobile,

" * * * * *

"(2) any relative * * *.
"*Definitions:* Under Part I;

"* * * * *

" 'Relative' means a relative of the named insured who is a permanent resident of the same household;

" * * * * *

" 'Non-Owned Automobile' means an automobile or trailer not owned by or furnished for the regular or frequent use of either the named insured or any relative, other than a temporary substitute automobile; but does not include any automobile or trailer used without the permission of the owner."

him money to help with his living expenses. In January he registered for classes at Lane and continued in school until the end of the term. Unable to find a summer job in Grants Pass, Ryder went to Wallowa, Oregon, to take a job. He intended to return to college at the end of the summer. He considered his father's home as his residence and left his possessions there. He often returned to Grants Pass for holidays, and a bedroom was kept available for his use. In applying for the insurance policy in issue, defendant Ryder's father listed himself as the only driver of the automobile, and listed as members of his household only his unlicensed daughter, age 16, to be excluded.

On June 18, 1976, an accident occurred in which defendant Childers was seriously injured. The automobile involved in the accident was owned by Childers, but was being driven with his permission by Ryder.

The question of whether a person is a resident of the household of a named insured has continued to be treated by our Supreme Court as a fact issue to be resolved by the trier of fact. *Waller v. Rocky Mtn. Fire & Casualty,* 272 Or 69, 71-72, 535 P2d 530, 531-32 (1975); *Schehen v. North-West Insurance,* 258 Or 559, 484 P2d 836 (1971). However, the court has required that there be sufficient evidence that the person seeking coverage and the insured "dwell or live together" as members of a household, in order to survive a motion for directed verdict. *Schehen v. North-West Insurance, supra* at 561-62. In *Schehen,* a dentist moved from Eugene to Klamath Falls, where he purchased a home and practiced dentistry for four years. By so doing, he established residence in Klamath Falls. His adult daughter and her teenage children, who theretofore had lived with him, remained in his prior home in Eugene. The Supreme Court held that although Dr. Schehen visited his daughter and her teenage children and gave them financial support, this was not sufficient evidence to submit to a jury that he

"lived, dwelled, or resided" with them in Eugene. 258 Or at 562-63.

Because there is evidence to support the finding below, we need not decide whether, under *Schehen*, a child who is temporarily away from home for camp, school, college, summer employment, or the like, loses protection under a "relative resident" clause of a family automobile policy the moment he ceases to physically "dwell or live" with his family.[2] Yet, we note that decisions from many jurisdictions conclude that such a clause can include a child who is away from home for school, for temporary employment, or for service in the armed forces. These decisions are collected in Annotation, 93 ALR3d 420 (1979).[3]

It has been held that a child may be temporarily absent from the household, or indeed may have more than one residence, without necessarily losing the protection afforded to a "resident of the household" under an insurance policy. *See Aetna Casualty & Surety Co. v. Means*, 382 F2d 26, 28 (10th Cir 1967); *Detroit Auto. Inter-Insurance Exchange v. Feys*, 205 F Supp 42 (ND Cal 1962); *Travelers Indem. Co. v. Mattox*, 345 SW2d 290, 292 (Tex Civ App 1961); Annotation, 93 ALR3d 420 (1979). For example, in *Aetna Casualty & Surety Co. v. Means, supra,* the court, applying Oklahoma law, held that despite the fact that insured's son was married and had his own automobile insurance policy, and despite testimony by both the insured and his son that the son was not a resident of the insured's household at the time of the accident, evidence that the son was a minor, lived away at college, had a room and kept clothing in the insured's house,

---

[2] We note that in *Schehen v. North-West Insurance,* 258 Or 559, 484 P2d 836 (1971), the insured moved away from his daughter and established residence in a distant city, while in this case the insured's son was temporarily away from home for college and was found not to have established a permanent residence elsewhere.

[3] Examination of the cases discussed in this annotation reveals that while some jurisdictions treat "relative resident" questions as fact issues and others treat them as a mixed question of fact and law, all agree that such a clause can (and often does) include a child away from home.

used the insured's address as his own on important papers, and received financial assistance from the insured, was sufficient to support the jury's determination that the son was a resident of the insured's household and was therefore covered under his automobile policy. In *Beck v. Pennsylvania National Mut. Cas. Ins. Co.*, 429 F2d 813 (5th Cir 1970), the court, applying Pennsylvania law, held that a son, who kept his personal belongings at his parents' home and returned there on every leave, was a resident of the household and therefore covered under the non-owned automobile clause of the insured's liability policy, despite the fact that the son was in the service and stationed away from home, and despite testimony that the insured desired to lower his premium by excluding his son from coverage.

The approach taken by our Supreme Court in *Waller v. Rocky Mtn. Fire & Casualty, supra,* is applicable in this case. There, a 24-year-old son left home for service in the Navy. Upon his discharge he returned to his parents' home for about a year. He then moved out-of-state and took a full-time job, but left many of his belongings at his parents' home and visited frequently. The trial court found that the son was no longer a resident of his parents' household entitled to coverage under a "relative resident" clause of their automobile insurance policy. The Supreme Court upheld the finding on the basis that evidence that the son was an adult, lived in another state, worked full time, and did not intend to return to his parents' home, plus the reasonable inferences to be drawn from that evidence, supported the further inference that he did not "dwell or live" with his parents. 272 Or at 75.

In this case, there was conflicting evidence. On his insurance application form the insured did not list Ryder as a resident of his household, because Ryder had been living away at school during the year and because the insured believed that listing Ryder would increase his premium. Ryder in fact was temporarily

living away from home in order to go to school. However, Ryder considered his father's home as his residence and left his possessions there. Further, he often returned for holidays, and a bedroom was kept available for his use. Ryder lived with his father prior to going away to college, and his father was giving him financial support. In the face of this evidence we cannot hold, as a matter of law, that there is no evidence to support the trial court's finding that Ryder was a resident of his father's household.

As the Supreme Court did in *Waller,* we uphold the trial court's factual determination regarding residency within the meaning of a "relative resident" clause, because there is evidence and reasonable inferences to be drawn therefrom which support that finding. *Hassan v. Guyer,* 271 Or 349, 352, 532 P2d 227 (1975); *White v. Bello,* 276 Or 931, 933, 556 P2d 1362 (1976).

Affirmed.

**TANZER, J.,** dissenting.

The majority errs in treating the issue solely as a matter of fact. It is elementary that before we can review the sufficiency of any finding, we must first determine what legal issue the facts must be sufficient to establish. This case presents a preliminary legal issue of what is meant by the phrase "relative * * * who is a permanent resident of the same household [as the insured]." Only after determining as a matter of law the definitional requirements of the term is it proper to proceed to the factual issue of whether the finding is supported by the evidence. That is essentially what the Supreme Court did in *Schehen v. North-West Insurance,* 258 Or 559, 484 P2d 836 (1971).

The fallacy of the majority is that it treats the "permanent resident" clause as having a fixed legal meaning which is the same in all situations, contexts and jurisdictions as a matter of law and then holds that we cannot say there was no evidence to support a

finding because other states have so held. Were that so, we would be bound by analogy to reverse the trial court based on the authority of *Garrow v. Pennsyl. Gen. Ins. Co.*, 288 Or 215, 603 P2d 1175 (1979). There, the Supreme Court construed the term "members of [the insured's] family residing in the same household" in ORS 743.800 (which governs personal injury protection coverage) to not include persons not actually residing in the home of the insured. The term in this case is not only analogous, but somewhat narrower because it requires permanence.

The term "permanent resident" is material in this case because it is used in an insurance contract, not in a statute. Accordingly, it should be construed under the well-established principles of contract law applicable to insurance policies. Those principles are well summarized in *Shadbolt v. Farmers Insur. Exch.*, 275 Or 407, 410-11, 557 P2d 478 (1976):

> "We have said, however, that when words or terms of a general nature are used in an insurance policy, such words or terms may be ambiguous, in the legal sense, when they could reasonably be given a broader or a narrower meaning, depending upon the intention of the parties in the context in which such words are used by them.
>
> "We have also said that an insurance policy should be construed 'according to its character and its beneficent purposes, and in the sense that the insured had reason to suppose that it was understood.'
>
> "Finally, we have said many times that if there is an ambiguity in the terms of an insurance policy, any reasonable doubt as to the intended meaning of such terms will be resolved against the insurance company and in favor of extending coverage to the insured." (Footnotes omitted.)

The intention of the parties and the sense in which the insured must have understood the term is demonstrated beyond serious question by the father's conscious decision not to insure his son. On the order for insurance, he listed himself as the only driver. Where asked to list "Ages of children residing in household,"

[386]

the father left the "Males" blank empty and, after "Females," named his 16-year-old daughter to be excluded as a nondriver. The father testified forthrightly regarding his intention and understanding: (1) that his children had always been required to insure themselves or pay the cost increment on his policy as the price they paid for driving; (2) that he had not listed his son as a resident because the son had been away from the home for almost a year and because he did not consider his son a resident of his household ("If I did, I would have included him here, also."); and (3) he did not desire or intend that his son be covered because he wanted the lower premium based on coverage of himself only and that had he listed his son, the premium would have been higher. It is clear from the testimony of the father that neither the insured nor the insurer regarded the son as a permanent resident of the household of the insured.

Applying the principles of *Shadbolt*, there is no reason for us to construe the contract differently than the parties did. Under the legal meaning of the term which was understood and intended by the parties to the contract, the facts in this case are insufficient to support a finding of coverage.

Schwab, C. J., and Buttler and Gillette, JJ., join in this dissent.